UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JERRAMEY LYNDELL ROPER,<br><br>　　　　　　　　Defendant. | CASE NO. CR12-5085 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION TO REDUCE SENTENCE |

This matter comes before the Court on remand from the Ninth Circuit Court of Appeals' decision, *United States v. Roper*, 72 F.4th 1097 (9th Cir. 2023), and Defendant Jerramey Roper's renewed Motion to Reduce Sentence, Dkt. 153. The Court has considered the Ninth Circuit's opinion as well as the briefing filed in support of and in opposition[1] to the motion and the remainder of the file and grants the motion for the reasons stated below.

//

//

---

[1] The Government's motions to file an overlength response, Dkt. 154, and to seal relevant medical records in its exhibit C, Dkt. 156, are **GRANTED**.

ORDER - 1

## I. BACKGROUND

In March 2012, Roper was charged by indictment with Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e); Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e); Possession of Cocaine Base with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii); Felon in Possession of Firearms in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(e); Possession of Firearms in Furtherance of Drug Trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A); and Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). Dkt. 10. Roper pled guilty to Possession of Cocaine Base with Intent to Distribute (Count 3) and Possession of Firearms in Furtherance of Drug Trafficking (Count 5). Dkts. 77, 78. The Government dismissed the remaining counts. Dkt. 89. Judge Ronald B. Leighton[2] sentenced Roper to 204 months of imprisonment to be followed by five years of supervised release. Dkt. 90. Roper is currently housed at the Federal Correctional Institute in McDowell County, West Virginia, and is scheduled to be released on April 24, 2026.

Roper first filed a motion to reduce his sentence pro se on March 2, 2021. Dkt. 110. After he was appointed counsel, he filed a supplemental motion to reduce sentence. Dkt. 137. The Court denied that motion in January 2022. Dkt. 147. Under the law at the time, the Court explained that it could not consider post-sentencing changes in decisional

---

[2] This case was reassigned to the undersigned in March 2021 after Judge Leighton retired from the federal bench. Dkt. 111.

ORDER - 2

law affecting Roper's sentencing guideline range as an extraordinary and compelling reason justifying compassionate release. *Id*. at 15. It acknowledged a circuit split and lack of binding Ninth Circuit precedent and noted that Roper could appeal its decision. *Id*. Roper appealed. Dkt. 148.

The Ninth Circuit determined that district courts may consider non-retroactive changes in post-sentencing decisional law when assessing whether a defendant has established extraordinary and compelling reasons for release. *Roper*, 72 F.4th at 1099. It explained that "[a]fter the district court denied Roper's motion, we held that 'Congress has only placed two limitations directly on extraordinary and compelling reasons: the requirement that district courts are bound by the Sentencing Commission's policy statement . . . and the requirement that "rehabilitation alone" is not extraordinary and compelling.'" *Id.* at 1100 (quoting *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022)). It explained further that the Supreme Court's June 2022 decision in *Concepcion v. United States,* 142 S. Ct. 2389 (2022), vests district courts with broad discretion in deciding § 3582(c)(1)(A) motions. *Id*. at 1100-101. *Conception* held that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." 142 S. Ct. at 2395. Although *Conception* delt with a different provision of the First Step Act than the §3582(c)(1)(A) compassionate release motions at issue here and in *Chen*, the Ninth Circuit "found its understanding of the district court's broad discretion equally applicable to § 3582(c)(1)(A) motions." *Roper*, 72 F.4th at 1100–101. The Ninth Circuit vacated the Court's order, Dkt. 147, and remanded the case for the Court here to consider Roper's

motion anew. It urged that the Court "should consider in the first instance whether the changes in decisional law tip the balance in Roper's favor." *Id*. at 1103. The Court does so below.

## II.   DISCUSSION

**A.   Motion to Reduce Sentence Under § 3582(c)(1)(A)**

Under 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotation marks omitted) (quoting 18 U.S.C. § 3582(b)). One of those limited circumstances is provided in 18 U.S.C. § 3582 (1)(A), which authorizes incarcerated people to directly petition a district court for a reduction in sentence (also known as compassionate release). It enables courts to reduce a sentence if they find that the defendant properly exhausted the administrative remedies, "extraordinary and compelling reasons warrant such a reduction," and "after considering the factors set forth in section 3553(a) to the extent that they are applicable." U.S.C. § 3582 (1)(A)(i). For motions filed by the Bureau of Prisons (BOP), courts must additionally conclude that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. The Sentencing Commission's current policy statement, § 1B1.13, does not apply to defendant-filed motions for sentence reduction. *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021).

In *Roper*, the Ninth Circuit acknowledged that "the Sentencing Commission recently issued a policy statement addressing defendant-filed motions," but did not

explain nor apply it, concluding instead "it is not yet in effect." 72 F.4th at 1101 n.2. Accordingly, the policy statement currently in effect provides only helpful guidance to the Court when exercising its discretion surrounding sentence reduction for a defendant-filed motion. *Aruda*, 993 F.3d at 802.

**B.     Extraordinary and Compelling Circumstances Analysis**

The Ninth Circuit remanded the case to the Court to conduct the extraordinary and compelling circumstances analysis in light of all the defendant's proffered reasons, including changes in non-retroactive decisional law. *Roper*, 72 F.4th at 1103. It acknowledged that "a combination of factors may move any given prisoner past [the threshold for relief], even if one factor alone does not." *Id*. (quoting *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023)). The Court addresses each of Roper's proffered reasons for release in turn. After it addresses each reason individually, the Court then considers them all together, assessing whether the amalgamation of the proffered reasons and unique circumstances of the movant warrant compassionate release.

**1.     Roper no longer qualifies as a "career offender" and would consequently face less imprisonment if sentenced today.**

When Roper was originally sentenced, the Court applied a "career-offender enhancement" to the sentence on the drug offense. U.S.S.G. § 4B1.1(a); Dkt. 85 at 6–8 (Presentence Investigation Report detailing Roper's prior convictions). All parties agree that he no longer qualifies as a career offender under current standards. *See* Dkt 147 at 5 (detailing how *State v. Blake,* 197 Wn.2d 170 (2021), and *United States v. Valencia-*

*Mendoza*, 912 F.3d 1215, 1219 (9th Cir. 2019), result in his no longer qualifying as a career offender); 72 F.4th at 1100 (same).

Without the career criminal enhancement, Roper's Guideline range would be 140 to 175 months[3] if sentenced today. *See* USSG § 5A (Sentencing Table). He has been continuously in custody on this matter for approximately 148 months since he was arrested by Pierce County law enforcement in May 2011. Dkt. 85, ¶59; *see also* Dkt. 7 (Federal Arrest on 02/22/2012). While this fact alone is not sufficient to justify compassionate release, it weighs heavily in favor of relief. The changes in law that shield Roper from the career criminal enhancement reflect critical shifts in how courts currently balance due process with deterrence. *See, e.g.*, *State v. Blake,* 197 Wn.2d 170, 173 (2021) (observing Washington's strict liability felony drug possession statute was the only one of its kind in the nation and holding it unconstitutional for punishing "innocent and passive conduct with no criminal intent" as a "serious crime").

**2.     Amendment 782 Cocaine Guideline Range similarly weighs in favor of reduction.**

Amendment 782 reduced the base offense level in the Drug Quantity Table, USSG § 2D1.1, by 2. It applies retroactively. In its order denying Roper relief, Dkt. 147, the Court acknowledged that Roper "would have qualified for the two-point deduction established by Amendment 782" if sentenced today. Dkt. 147 at 6. It denied relief under

---

[3] All parties agree on that this guideline range applies absent the career offender enhancement. For ease of reference, the calculation is as follows: removing the unconstitutional conviction, Roper would have had 12 criminal history points and his Criminal History Category would have been V. He also would have had a lower offense level of 29 instead of 34. Thus, his guideline range would have been 140–175 months. *See* USSG § 5A (Sentencing Table).

§ 3582(c)(1)(A) because it believed itself prohibited from considering the Amendment as part of the extraordinary and compelling circumstance. It denied relief under § 3582(c)(2) because at the time of sentencing Roper was considered a career offender. *Id*. The application notes under USSG § 1B1.10 caution that a reduction in imprisonment is not authorized under § 3582(c)(2) if "an amendment . . . is applicable . . . but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision." Consequently, his career offender status disqualified him for (c)(2) relief because it nullified the two-point reduction from Amendment 782. The "extraordinary and compelling" section of the statute, § 3582(c)(1)(A), suffers no such constraint.

The Government concedes that the Court can now consider Amendment 782 as part of its extraordinary and compelling circumstances analysis in light of the Ninth Circuit's decision in *Roper*. Dkt. 155 at 8 n.3. It argues however that Roper cannot "use a motion under § 3582(c)(1)(A) as a back-door to recalculating his Guidelines range under § 3582(c)(2)." *Id*.

This argument is unavailing. Relief under § 3582(c)(1)(A) necessitates a certain degree of "recalculating" a sentence in discerning how much to reduce it. Just as the Court considers the changes in guideline range that ensue from stripping Roper of his career criminal status as part of its extraordinary and compelling circumstances analysis, it considers the additional two-point reduction from Amendment 782. The resulting guideline range based on an adjusted offense level of 27 would be from 120 to 150 months. Again, Roper has already served over 148 months. While this fact alone is

insufficient to warrant compassionate release, it weighs heavily in favor of relief. The passage of Amendment 782 reflects a change in what constitutes just punishment based on the quantity of drugs involved in an offense.

**3. Sentencing disparity between cocaine base and cocaine and the pending EQUAL Act set to resolve it weigh in favor of relief.**

Roper urges the Court to consider the sentencing disparity between cocaine and cocaine base (crack) and the pending legislation that would remedy it. Dkt. 137 at 7. When he was sentenced, the federal sentencing guideline range for possession of at least 280 grams of cocaine base is the same as for possession of 5 kilograms of cocaine. A 18:1 disparity is still in the guidelines. Senate Bill 79,[4] the Eliminating a Quantifiably Unjust Application of the Law Act (EQUAL Act), would reduce the disparity between cocaine and cocaine base for sentencing purposes from 18:1 to 1:1 under 21 U.S.C. § 841(b)(1)(A) and (B).

The Government correctly observes that the EQUAL Act is not yet enacted law. Dkt. 155 at 4.[5] Nevertheless, in 2022 the Department of Justice provided written testimony to the Senate Judiciary Committee in support of the EQUAL Act, saying, "the current sentencing differential between crack and powder cocaine is not based in

---

[4] In the Senate, the bill currently is referred to the Committee on the Judiciary. *See* S.79, EQUAL Act of 2021, https://www.congress.gov/bill/117th-congress/senate-bill/79/all-info (last visited Oct. 13, 2023).

[5] The Government's assertion that the Court "rejected" Roper's argument regarding the EQUAL Act is misleading. The Court only rejected relief under 3582(c)(2) due to the constraints of that provision in light of his having been a career offender at the time of sentencing. Dkt. 147 at 7. It did not consider or reject the EQUAL Act as part of its extraordinary and compelling circumstance analysis.

evidence and yet has caused significant harm in particular to communities of color. It's past time to correct this." U.S. Dept. of Justice, Readout of Justice Department Leadership Meeting, March 1, 2022.[6] And district courts in the Ninth Circuit have already employed the 1:1 ratio for cocaine and cocaine base offenses that the EQUAL act promises. *See, e.g.*, *United States v. Reese* (No. 9-26) (E.D. Cal. Jan. 12, 2012), ECF No. 138 (adopting a 1:1 ratio after considering the lack of evidence supporting the proposition that crack cocaine is associated with greater harm than powder cocaine and the disproportionate impact on African-American offenders). Courts in other jurisdictions have similarly rejected the current 18:1 guideline disparity for crack and cocaine. *See, e.g., United States v. Williams*, 788 F. Supp. 2d 847, 891–92 (N.D. Iowa 2011); *Henderson v. United States*, 660 F. Supp. 2d 751, 753–74 (E.D. La. 2009); *United States v. Whigham*, 754 F. Supp. 2d 239, 246 (D. Mass. 2010); *United States v. Gardner*, 20 F. Supp. 3d 468, 473 (S.D.N.Y. 2014).

District courts in the Ninth Circuit and elsewhere have also considered the EQUAL Act in requests for sentence reduction under the First Step Act despite the fact that it is not yet enacted law. *See, e.g.*, *United States v. Parker*, No. 2:06-cr-00479-KJM-AC-1, 2022 WL 7705294, at *4 (E.D. Cal. Oct. 13, 2022); *see also United States v. McKinney*, No. 06-20078-JWL, 2022 WL 1136189 (D. Kan. Apr. 18, 2022) (considering

---

[6] Available at https://www.justice.gov/opa/pr/readout-justice-department-leadership-meeting-famm (last accessed Oct. 13, 2023); *see also* Statement of the U.S. Dept. of Justice Before the Committee on the Judiciary United States Senate, June 22, 2021, available at https://sentencing.typepad.com/files/doj-equal-act-testimony--final.pdf (last accessed Oct. 13, 2023).

ORDER - 9

the EQUAL Act in evaluating defendant's motion to reduce sentence). Other courts have refused to consider the EQUAL Act as part of an extraordinary and compelling circumstances analysis. *United States v. Quinn*, No. 22-3262, 2023 WL 5091175, at *2 (10th Cir. Aug. 9, 2023) (refusing to consider the EQUAL Act and collecting cases similarly refusing to consider it).

Given the Ninth Circuit's emphasis in *Chen* and *Roper* on the discretion of district courts to consider all reasons proffered during an extraordinary and compelling circumstances analysis, and the fact that courts are already employing a 1:1 ratio in the Ninth Circuit, the Court will consider the EQUAL Act. If sentenced today, Roper would likely not suffer the disparity between cocaine and cocaine base. While this fact alone is not sufficient to warrant a sentence reduction under § 3582(c)(1)(A), it weighs in favor of relief considering the consensus that the cocaine and crack disparity should never have been operative in the first instance.

**4.     Roper's health concerns, taken altogether, weigh in favor of release.**

Roper urges the Court to consider a range of health issues as part of his extraordinary and compelling circumstances. This includes intermittent rectal bleeding. Dkt. 153 at 6. Roper has been waiting for over a year for a colonoscopy ordered by a doctor in September 2022. *Id*. He was diagnosed with an unspecified disease of the anus and rectum in August 2022. *Id*. Roper reports he suffers from dizzy spells, migraines and shortness of breath. Dkt. 153 at 5. He suffered a shoulder injury and requested an MRI in September 2022. *Id*. at 6. As of August 16, 2023, he has not received an MRI. *Id*. Roper

also argues that he fears reinfection of COVID-19, particularly given his comorbidities of obesity and depression.[7] Dkt. 137 at 11.

The Government argues that none of these health issues are sufficiently extraordinary or compelling to warrant relief. Dkt. 155 at 11–13. In explaining the delays in Roper's treatment, the Government asserts that it is due in part to Department of Corrections transferring Roper to a different prison. Dkt. 155 at 12. It argues that Roper's medical issues are "manageable" within the prison system. *Id*. at 11.

Generally, allegations of inadequate health care will not support a conclusion that the movant has demonstrated extraordinary and compelling reasons warranting release. Here, Roper has chronicled the unmet need for care that warrant consideration of his health conditions as a part of the amalgamation of the more significant bases the Court finds justify granting the motion. The Court considers Roper's symptoms without accepting any of Roper's allegations about the cause of his health conditions. He has alleged that some of his symptoms are born of an alleged carbon monoxide poisoning and others were exacerbated by an alleged black mold outbreak. Dkt. 153 at 3–4. For purposes of this extraordinary and compelling circumstances analysis, the Court focuses on his documented symptoms for which he properly exhausted administrative remedies and the adequacy of treatment for the same in DOC. The record is inadequate to discern

---

[7] Center for Disease Control and Prevention, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated May 11, 2023).

whether the allegations of carbon monoxide or black mold are true, though Roper is of course entitled to litigate these issues through a different action such as a § 1983 claim.

**5.      The Court does not consider Roper's claims for which he failed to exhaust administrative remedies.**

Roper's renewed motion for compassionate relief raises for the first time other health concerns and claims about the conditions of his confinement. This includes an alleged black mold infestation that he claims exacerbated his health issues. Dkt. 153 at 4. The Government correctly observes that Roper failed to exhaust administrative remedies before including those arguments in his present motion. Dkt. 155 at 11.

A defendant may seek § 3582(c)(1)(A) relief from a court only if he has "'fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Ninth Circuit's decision in *Roper* did not obviate the exhaustion requirement. The Court therefore does not consider Roper's claims of exposure to black mold or new symptoms stemming from any such exposure in its analysis for compassionate release.

**6.      Evidence of rehabilitation and family support weigh in favor of release.**

Although rehabilitation alone cannot warrant compassionate release, it and family support weigh in favor of relief. *See United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) ("'[R]ehabilitation . . . alone' is not extraordinary and compelling.") (quoting 28 U.S.C. § 994(t)). In his over twelve years of incarceration, Roper has never been

disciplined for violence and has completed various BOP educational programming. Dkt. 137 at 11, Dkt. 110-1. Roper's release plan was recently re-approved by the Office of Probation. Dkt. 164.

**7. The totality of Roper's circumstances establish extraordinary and compelling reasons warranting compassionate release.**

Roper met his burden to establish extraordinary and compelling circumstances justifying compassionate release under § 3582(c)(1)(A)(i). Since he was sentenced in 2013, both Washington and Federal law have reduced sentences for nonviolent drug offenses and made strides towards ending sentencing disparity for cocaine and cocaine base offenses. These reductions and Roper's health concerns and rehabilitation provide the requisite extraordinary and compelling circumstances for compassionate release.

**8. The pending Sentencing Commission policy statement does not preclude relief.**

The United States Sentencing Commission voted to promulgate amendments to the policy statement, USSG § 1B1.13, that governs motions for compassionate release.[8] Absent Congressional action, the amended policy statement will take effect on November 1, 2023. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28, 254 (May 3, 2023).

The Ninth Circuit acknowledged the pending policy statement in *Roper* in a footnote. 72 F.4th at 1101 n.2. It did not explain nor apply it to Roper's motion, noting

---

[8] Amendments to the Sentencing Guidelines, April 27, 2023 (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf

instead "it is not yet in effect." *Id*. The Government argues extensively that the Court should consider the pending policy statement and consequently deny relief. Dkt. 155 at 5–7. It asserts that, to be considered as an extraordinary and compelling circumstance under the new guidelines, the defendant's sentence must be, among other things, "unusually long," and the intervening change in law must produce "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id*. at 11 (quoting Amendments to the Sentencing Guidelines, April 27, 2023, at p. 5.). It argues that, given his plea deal, Roper's sentence was not unusually long in the first instance and that the approximately five-year "disparity" between it and a present-day sentence is not sufficiently "gross." *Id*. 7–9.

      The Government concedes that the pending policy statement is not binding and urges merely that it "inform this Court's discretion." Dkt. 155 at 7. It similarly concedes that the Ninth Circuit has not addressed in any published case what number of years qualifies as a "gross disparity" between a hypothetical current versus original sentence. *Id*. at 9 n. 4. It argues instead that the Court should look to out-of-jurisdiction cases with extreme examples of sentence disparities and conclude that "a potential difference of five years in Roper's sentence based on a change in the application of the Guidelines, while no doubt significant to him, is nowhere near the length of the sentencing disparities caused by changes in mandatory minimums that other circuits have considered extraordinary and compelling." *Id*. at 9.

      These arguments are not persuasive. The approximately five-year disparity is sufficient to warrant relief considering all the other factors Roper proffered. Furthermore,

the arguments surrounding the plea deal are not as simple as the Government suggests. If Roper were to engage in a plea deal today for the same crimes underlying his conviction, the resulting sentence may well have been significantly less than 204 months considering the multiple changes in law surrounding nonviolent drug offenses over the past decade.

**C.  The § 3553(a) factors weigh in favor of release.**

Because Roper successfully establishes extraordinary and compelling reasons warranting release, the Court next considers whether reduction is warranted after consideration of the factors under 18 U.S.C. § 3553(a).

The first two factors require the Court to consider whether the movant would be a threat to public safety. The Court is satisfied that Roper no longer poses a safety risk. While his conviction involved a firearm, it did not involve actual violence. The defense offers ample evidence of Roper's good behavior and rehabilitation programs while incarcerated. Dkt. 137 at 11, Dkt. 110-1. Furthermore, each time the Government discusses any safety risk with Roper, it uses past tense. *See, e.g.,* Dkt. 155 at 13 ("The firearm Roper used *heightened* the risk he *posed* to the community. . . . Both the danger that Roper *has presented* to the community and the need to avoid sentencing disparity are reasons to require him to serve his full sentence.") (emphasis added). It further concedes that any disciplinary issues that Roper has had in his approximately twelve years in prison have been nonviolent. *Id*.

The § 3553(a) factors additionally require the Court to consider whether reducing the sentence will inhibit the deterrent effect, reflect the seriousness of the crime, or result in sentencing disparity issues. These factors are somewhat ironic in the context of

Roper's motion. The bulk of his extraordinary and compelling circumstances is evidence that in the decade after he was sentenced both statutes and common law reduced or did away with punishment for the crimes underlying his convictions. Accordingly, these § 3553(a) factors support release.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Roper's Motion to Reduce Sentence, Dkt. 153, is **GRANTED**. His sentence is converted to credit for time served, with a period of five years of supervised release with the conditions imposed in his original judgment and sentence, Dkt. 90.

Dated this 16th day of October, 2023.

BENJAMIN H. SETTLE
United States District Judge